## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                    Case No: 11-40654-LMI
                                                          Chapter 13

Frey O. Matilla
       and
Irma Matilla
_____ Debtors _____/

## MOTION TO VALUE AND DETERMINE SECURED STATUS OF LIEN
## ON REAL PROPERTY

## IMPORTANT NOTICE TO CREDITORS:
## THIS IS A MOTION TO VALUE YOUR COLLATERAL

**This Motion seeks to value collateral described below securing the claim of the creditor listed below.**

---

**IF YOU DISPUTE THE VALUE ALLEGED OR TREATMENT OF YOUR CLAIM PROPOSED IN THIS MOTION, YOU MUST FILE A WRITTEN OBJECTION NO LATER THAN TWO BUSINESS DAYS PRIOR TO THE SCHEDULED HEARING [SEE LOCAL RULE 3015-3(A)(2)]**

**If you have not filed a proof of claim, you have until the later of the claims bar date or 21 days from the date this Motion was served upon you to file a proof of claim or you will be deemed to have waived the right to payment of any unsecured claim to which you might otherwise be entitled. [See Local Rule 3015-3(A)(4)]**

1.   Pursuant to 11 U.S.C. §506, Bankruptcy Rule 3012, and Local Rule 3015-3, the debtor seeks to value real property securing the claim of CitiMortgage (Account No. XXXX8689) (the "Lender"). Lender holds a mortgage recorded at OR Book  25853  Pages  0311-0316 in the official records of  Miami-Dade County  County, Florida.

2.    The real property is located at <u>1881 West 72nd Place, Hialeah, FL  33014</u> and is more particularly described as follows:

 Lot 13, Block 4, Palm Springs Lakes Townhouses, First Addition, According to the Plat Thereof, as recorded in Plat Book 93, at Page 41, of the Public Records of Miami-Dade County, Florida.

3.    At the time of the filing of this case, the value of the real property is <u>$95,000.00</u> as determined by <u>Private Appraisal </u>.

4.    <u>CitiMortgage (Acct. No. XXXX 8515   </u> hold liens on the real property, senior to priority to Lender, securing claims in the aggregate amount of $<u>115,256.41 </u>.

5.    *(Select only one):*

    <u> X </u>    Lender's collateral consists solely of the debtor's principal residence.  As there is no equity in the real property after payment in full of the claims secured by liens senior to that of Lender, the value of Lender's secured interest in the real property is $0.

    ___    Lender's collateral is not solely the debtor's principal residence.  After payment in full of the claims secured by liens senior to that of Lender, there is equity of $ _____ remaining in the real property. Accordingly, the value of Lender's secured interest in the real property is $ _____ and the value of the Lender's unsecured, deficiency claim is $ _____.

6.    The undersigned reviewed the docket and claims register and states (select only one):

    <u> X </u>    Lender has not filed a proof of claim in this case.  The trustee shall not disburse any payments to Lender unless a proof of claim is timely filed. In the event a proof of claim is timely filed, it shall be classified as a secured claim to the extent provided in paragraph 5, above, and as a general unsecured claim for any deficiency, regardless of the original classification in the proof of claim as filed.

                                        or

    ___    Lender filed a proof of claim in this case.  It shall be classified as a secured claim to the extent provided in paragraph 5, above, and as a general unsecured claim for any deficiency, regardless of the original classification in the proof of claim.

7.    The subject real property may not be sold or refinanced without proper notice and further order of the court.

**WHEREFORE,** the debtor respectfully requests an order of the Court (a) determining the value of the real property in the amount asserted in this Motion, (b) determining the secured status of the Lender's lien as stated above, (c) determining that any timely filed proof of claim is classified as stated above, (d) if Lender's secured interest in the real property is determined to be $0, deeming Lender's mortgage on the real property void and extinguished automatically, without further order of the Court, upon entry of the debtor's discharge in this chapter 13 case, and (e) providing such other and further relief as is just.

## NOTICE IS HEREBY GIVEN THAT:

1.    In accordance with the rules of this Court, unless an objection is filed with the Court and served upon the debtor, the debtor's attorney, and the trustee at least two (2) business days prior to the hearing scheduled on this Motion, the value of the collateral may be established at the amount stated above without further notice, hearing or order of the Court. Pursuant to Local Rule 3015-3, timely raised objections will be heard at the hearing scheduled on the Motion.

2.    The undersigned acknowledges that this Motion and the notice of hearing thereon must be served pursuant to Bankruptcy Rule 7004 and Local Rule 3015-3 at least 21 days prior to the hearing date and that a certificate of service must be filed when the Motion and notice of hearing thereon are served.

CERTIFICATE OF SERVICE ***AND COMPLIANCE***
***WITH LOCAL RULES 3015-3(A)(1) AND 9073-1(D)***

I hereby certify that a copy of this Motion and Notice of Hearing and the clerk's "Notice of Chapter 13 Bankruptcy Case" and chapter 13 plan was served pursuant to Bankruptcy Rule 7004 on the chapter 13 trustee and the following affected parties on this 18th day of January 2012.

Nancy Herkert, Trustee
ECF Registered User

CitiMortgage, Inc.
c/o Sanjiv Das, CEO
1000 Technology Dr.
O'Fallon, MO 63368

CitiMortgage, Inc.
CT Corporation System, R.A.
1200 S. Pine Island Road
Plantation FL 33324

CitiMortgage, Inc.
POB 30509
Tampa, FL 33631

Submitted By:


/s/ Robert Sanchez
Robert Sanchez, Esq.
Robert Sanchez, P.A.
900 W 49th Street, Ste 500
Hialeah, FL 33012
Tel: (305) 687-8008
Fl Bar No. 0442161

:

*** I N V O I C E ***

PMR APPRAISALS, INC
2901 SW 187TH TER
MIRAMAR, FL 33029
RUBEN  MARTINEZ    RD7194

Invoice #:  RM082911

Date Invoice  08/14/11

Terms:

Date Due:

To:  PRIVATE
     1881 W 72ND PL

Borrower: MATILLA, FREY O & IRMA

For Property located at

1881 W 72ND PL
HIALEAH                    FL        33014

Fee: $                    250

Remittance Copy

Please remit payment to:  PMR APPRAISALS, INC
                          2901 SW 187TH TER
                          MIRAMAR, FL 33029
                          RUBEN  MARTINEZ    RD7194

Invoice #:     RM082911

File #:        RM082911

Total Amount Due:              $  PAID

Amount Remitted (if different)  $

PMR APPRAISALS, INC

PMR APPRAISALS, INC
2901 SW 187TH TER
MIRAMAR, FL 33029
RUBEN MARTINEZ    RD7194

PRIVATE
1881 W 72ND PL

In accordance with your request, I have personally
inspected and appraised the property located at:

1881 W 72ND PL
HIALEAH                                    FL            33014

The purpose of the appraisal was to estimate the market
value of the property, as improved, in unencumbered fee
simple title of ownership.

The subject property consists of:

| 6 | Rooms |
| 3 | Bedrooms |
| 2.5 | Bath(s) |

The   TOWNHOUSES   style residence contains    1,496    square feet of
Gross Living Area.

It is my opinion that the estimated market value of the
property as of        08/14/11        is $      95,000      .

The above information has been automatically extracted
from the appraisal and inserted in this cover page.

Respectfully submitted,

Ruben Martinez St Cert Res REA

PMR APPRAISALS, INC

RM082911

PMR APPRAISALS, INC

### A P P R A I S A L   O F



**A SINGLE FAMILY RESIDENCE**

**L O C A T I O N** : 1881 W 72ND PL
HIALEAH                           FL              33014

**C L I E N T** : PRIVATE
1881 W 72ND PL

**AS OF DATE** : 08/14/11

**A P P R A I S E R** : Ruben Martinez St Cert Res REA

**Uniform Residential Appraisal Report**

File # RM082911

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 1881 W 72ND PL | City HIALEAH   State FL   Zip Code 33014 |
| Borrower MATILLA, FREY O & IRMA | Owner of Public Record MATILLA, FREY O & IRMA   County MIAMI DADE |
| Legal Description FIRST ADDN TO PALM SPRINGS TOWNHOUSES PB 93-41 LOT 13 BLK 4 | |
| Assessor's Parcel # 04-2026-036-0260 | Tax Year 2010   R.E. Taxes $ 1,109.14 |
| Neighborhood Name PALM SPGS LAKES TWNHS ADD 01 | Map Reference 52-40-26   Census Tract 9306 |
| Occupant X Owner   Tenant   Vacant   Special Assessments $ | PUD   HOA $ NONE**   per year   per month |
| Property Rights Appraised X Fee Simple   Leasehold   Other (describe) | |
| Assignment Type   Purchase Transaction   Refinance Transaction X Other (describe) MARKET VALUE *** | |
| Lender/Client PRIVATE   Address 1881 W 72ND PL   FL   33012 | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   Yes  X No
Report data source(s) used, offering price(s), and date(s).   PUBLIC RECORDS/MLS

| | |
|---|---|
| I   did   did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.   NOT APPLICABLE | |

Contract Price $   Date of Contract   Is the property seller the owner of public record?   Yes   No   Data Source(s)
Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   Yes   No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location | Urban X Suburban   Rural | Property Values | Increasing   Stable X Declining | | PRICE $ (000) | AGE (yrs) | One-Unit 80 % | |
| Built-Up | X Over 75% 25-75%   Under 25% | Demand/Supply | Shortage   In Balance X Over Supply | | Low 52 | 15 | 2-4 Unit % | |
| Growth | Rapid X Stable   Slow | Marketing Time | Under 3 mths 3-6 mths X Over 6 mths | | High 150 | 50 | Multi-Family 5 % | |
| | | | | | Pred. 95 | 35 | Commercial 10 % | |
| | | | | | | | Other 5 % | |

Neighborhood Boundaries   SUBJECT PROPERTY IS LOCATED NORTH OF W 68TH ST, SOUTH OF W 84TH ST, EAST OF PALMETTO HWY AND WEST OF W 16TH AVE .

Neighborhood Description   SEE ADDENDUM

Market Conditions (including support for the above conclusions)   SEE ADDENDUM

| | |
|---|---|
| Dimensions 0.07 ACRES | Area 3,046 SF   Shape RECTANGULAR   View OTHER HOUSE |
| Specific Zoning Classification R-4 | Zoning Description TOWNHOUSE/ROWHOUSE |
| Zoning Compliance X Legal   Legal Nonconforming (Grandfathered Use)   No Zoning   Illegal (describe) | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use?   X Yes   No   If No, describe

| Utilities | Public Other (describe) | | Public Other (describe) | | Off-site Improvements—Type | Public Private |
|---|---|---|---|---|---|---|
| Electricity | X | Water | X | Street ASPHALT | X | |
| Gas | N/A | Sanitary Sewer | X | Alley N/A | | |

FEMA Special Flood Hazard Area   Yes  X No   FEMA Flood Zone X   FEMA Map # 0114L   FEMA Map Date 09/11/2009

Are the utilities and off-site improvements typical for the market area?   X Yes   No   If No, describe
Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   X Yes   No   If Yes, describe
EXTERNAL OBSOLESCENCE , BECAUSE SUBJECT PROPERTY IS LOCATED NEXT TO FACTORY STORES  AND THE EFFECT OF TRAFFIC AND NOISE.

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|---|---|
| Units X One   One with Accessory Unit | X Concrete Slab   Crawl Space | | Foundation Walls CONCRETE/AVERAGE | Floors TILE/AVERAGE | |
| # of Stories TWO | Full Basement   Partial Basement | | Exterior Walls CB STUCCO/AVERAGE | Walls DRYWALL/AVERAGE | |
| Type   Det.   Att. X S-Det./End Unit | Basement Area   sq. ft. | | Roof Surface ROOL COMP/AVG | Trim/Finish WOOD/AVERAGE | |
| X Existing   Proposed   Under Const. | Basement Finish   % | | Gutters & Downspouts NONE | Bath Floor TILE/AVERAGE | |
| Design (Style) TOWNHOUSES | Outside Entry/Exit   Sump Pump | | Window Type SINGLE HUNG/ALUM/AVG | Bath Wainscot TILE/AVERAGE | |
| Year Built 1972 | Evidence of   Infestation | | Storm Sash/Insulated NONE | Car Storage   None | |
| Effective Age (Yrs) 15 | Dampness   Settlement | | Screens SCREENS/AVERAGE | X Driveway   # of Cars TWO | |
| Attic X None | Heating X FWA   HWBB   Radiant | | Amenities   WoodStove(s) # | Driveway Surface CONCRETE | |
| Drop Stair   Stairs | Other   Fuel ELEC | | Fireplace(s) #   X Patio/Deck X Porch | Garage   No of Cars | |
| Floor   Scuttle | Cooling X Central Air Conditioning | | Pool   Other | Carport   No of Cars | |
| Finished   Heated | Individual   Other | | | Att.   Det.   Built-in | |

Appliances X Refrigerator X Range/Oven   Dishwasher   Disposal   Microwave   Washer/Dryer X Other (describe) FAN/HOOD
Finished area above grade contains   6 Rooms   3 Bedrooms   2.5 Bath(s)   1,496 Square Feet of Gross Living Area Above Grade
Additional features (special energy efficient items, etc.).   NO SPECIAL ENERGY EFFICIENT ITEMS NOTED.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   CURRENT OWNER HAS PROPERLY MAINTAINED SUBJECT PROPERTY. THE SUBJECT IS IN AVERAGE CONDITION AND NO REPAIRS NEEDED.  NO PHYSICAL OR FUNCTIONAL OBSOLESCENCE NOTED AT THE TIME OF INSPECTION.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   Yes X No   If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   X Yes   No   If No, describe

Freddie Mac Form 70 March 2005                    Page 1 of 6                    Fannie Mae Form 1004 March 2005

PMR APPRAISALS, INC                    Powered by appraisal.com

Uniform Residential Appraisal Report       File #    RM082911

| | | | |
|---|---|---|---|
| There are 13 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 65,000 to $ 125,000 | | | |
| There are 9 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 75,000 to $ 115,000 | | | |

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Address | 1881 W 72ND PL HIALEAH, FL | 1598 W 73RD ST HIALEAH, FL | 1686 W 72ND ST HIALEAH, FL | 7306 W 18TH AVE HIALEAH, FL |
| Proximity to Subject | | 0.45 MILES | 0.35 MILES | 0.10 MILES |
| Sale Price | $ | $ 92,500 | $ 135,000 | $ 95,000 |
| Sale Price/Gross Liv. Area | $ 0 sq. ft. | $ 72.15 sq. ft. | $ 94.41 sq. ft. | $ 67.86 sq. ft. |
| Data Source(s) | | PUBLIC RECORDS/ MLS | PUBLIC RECORDS/ MLS | PUBLIC RECORDS/ MLS |
| Verification Source(s) | | MLS # M1475018 | MLS # M1448584 | MLS # A1528270 |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
|---|---|---|---|---|---|---|---|
| Sale or Financing | | FHA | | CASH | | FHA | |
| Concessions | | N/A | | N/A | | N/A | |
| Date of Sale/Time | | 04/15/11 | 0 | 04/01/11 | 0 | 07/29/11 | 0 |
| Location | NEXT FACTORY | SUBURBAN/AVG | -10,000 | SUBURBAN/AVG | -10,000 | SUBURBAN/AVG | -10,000 |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 3,046 SF | 3,799 SF | 0 | 3,045 SF | 0 | 4,020 SF | 0 |
| View | OTHER HOUSE | CANAL | NO ADJ | LAKE | -10,000 | OTHER HOUSES | 0 |
| Design (Style) | TOWNHOUSES | TOWNHOUSE | 0 | TOWNHOUSE | 0 | TOWNHOUSE | 0 |
| Quality of Construction | CBS/AVERAGE | CBS/AVERAGE | 0 | CBS/AVERAGE | 0 | CBS/AVERAGE | 0 |
| Actual Age | 39 YEARS | 46 YEARS | 0 | 40 YEARS | 0 | 40 YEARS | 0 |
| Condition | AVERAGE | AVERAGE | 0 | AVERAGE | 0 | AVERAGE | 0 |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | 0 | Total Bdrms. Baths | 0 | Total Bdrms. Baths | 0 |
| Room Count | 6 3 2.5 | 5 2 1.5 | 3,000 | 5 2 | 3,000 | 5 2 2.5 | 0 |
| Gross Living Area | 1,496 sq. ft. | 1,282 sq. ft. | 5,350 | 1,430 sq. ft. | NO ADJ | 1,400 sq. ft. | 2,400 |
| Basement & Finished | N/A | N/A | 0 | N/A | 0 | N/A | 0 |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | STANDARD | STANDARD | 0 | STANDARD | 0 | STANDARD | 0 |
| Heating/Cooling | CENTRAL | CENTRAL | 0 | CENTRAL | 0 | CENTRAL | 0 |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | CENTRAL | CENTRAL | 0 | CENTRAL | 0 | CENTRAL | 0 |
| Porch/Patio/Deck | PORCH/PATIO | PORCH/PATIO | | PORCH/PATIO | | PORCH/PATIO | |
| | | | | | | | |
| Net Adjustment (Total) | | + X - | $ -1,650 | + X - | $ -17,000 | + X - | $ -7,600 |
| Adjusted Sale Price | | Net Adj. -1.78 % | | Net Adj. -12.59 % | | Net Adj. -8 % | |
| of Comparables | | Gross Adj. 19.84 % $ 90,850 | | Gross Adj. 17.04 % $ 118,000 | | Gross Adj. 13.05 % $ 87,400 | |

X did   did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research did X did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s)   WIN 2 DATA, MLS
My research did X did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s)   WIN 2 DATA, MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NO PRIOR SALE WITHIN | NO PRIOR SALE WITHIN | NO PRIOR SALE WITHIN | NO PRIOR SALE WITHIN |
| Price of Prior Sale/Transfer | PAST 36 MONTHS PER | PAST 12 MONTHS PER | PAST 12 MONTHS PER | PAST 12 MONTHS PER |
| Data Source(s) | PUBLIC RECORDS/ MLS | PUBLIC RECORDS/ MLS | PUBLIC RECORDS/ MLS | PUBLIC RECORDS/ MLS |
| Effective Date of Data Source(s) | 08/14/11 | 08/14/11 | 08/14/11 | 08/14/11 |

Analysis of prior sale or transfer history of the subject property and comparable sales       NO SALES IN THE PAST 3 YRS

Summary of Sales Comparison Approach       ALL COMPARABLES ARE LOCATED IN THE SAME GENERAL AREA AS SUBJECT. ALL COMPARABLES ARE SIMILAR TO THE SUBJECT IN TERMS OF DESIGN AND APPEAL. MOST WEIGHT HAS BEEN GIVEN TO COMP THREE BECAUSE IT IS LOCATED IN THE SAME SUBDIVISION AS SUBJECT. APPRAISER MADE A NEGATIVE ADJUSTMENTS FOR LOCATION ON ALL COMPS ,BECAUSE SUBJECT PROPERTY IS LOCATED NEXT TO FACTORY STORES AND THE EFFECT OF TRAFFIC AND NOISE. APPRAISER WAS NOT ABLE TO FIND COMPS WITH SIMILAR EXTERNAL OBSOLESCENT EFFECT AS SUBJECT. ALL ADJUSTMENTS ARE WITHIN THE FNMA GUIDELINE OF 15 AND 25 PERCENT

Indicated Value by Sales Comparison Approach $       95,000

Indicated Value by: Sales Comparison Approach $ 95,000 Cost Approach (if developed) $ 122,700 Income Approach (if developed) $ N/A
MARKET RANGE IS FROM $87,400 TO $118,000 WITH AN ESTIMATED MARKET VALUE OF $ 95,000 STRONGLY SUPPORTED BY THE COST APPROACH AT $122,700
NO WEIGHT GIVEN TO THE INCOME APPROACH AS HOME IS OWNER OCCUPIED

This appraisal is made X "as is", subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair.

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 95,000 as of 08/14/11 , which is the date of inspection and the effective date of this appraisal.

Uniform Residential Appraisal Report    File #    RM082911

APPRAISER COMPLETED A FULL VISUAL INSPECTION THE SUBJECT PROPERTY.

USPAP COMPLIANCE : IN COMPLIANCE WITH THE ETHICS RULE OF USPAP, I HEREBY CERTIFY THAT THIS APPRAISER HAS NOT PERFORMED ANY SERVICES
REGARDING THE SUBJECT PROPERTY  WITHIN THE 36 MONTHS TIME PERIOD IMMEDIATELY PRECEDING ACCEPTANCE OF THE ASSIGNMENT, AS AN
APPRAISER OR IN ANY OTHER CAPACITY.

**ADDITIONAL COMMENTS**

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate your cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)    APPRAISER WAS UNABLE TO FIND ANY VACANT LAND SALES IN
THE SUBJECT'S IMMEDIATE MARKETING AREA.  LOT VALUE WAS YIELDED FROM ABSTRACT THE LOT VALUE FROM THE TOTAL SALES PRICE OF SIMILARLY
IMPROVED LOTS.

| ESTIMATED | REPRODUCTION OR | X REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | 20,000 |
|---|---|---|---|---|---|
| Source of cost data  MARSHALL & SWIFT | | | Dwelling    1,496 Sq. Ft. @    95 | = $ | 142,120 |
| Quality rating from cost service    N/A    Effective date of cost data    N/A | | | Sq. Ft. @ | = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | | | | | |
| GROSS LIVING AREA CALCULATIONS WERE BASED ON EXTERIOR | | | Garage/Carport    Sq. Ft. @ | = $ | |
| MEASUREMENTS MADE BY APPRAISER. | | | Total Estimate of Cost-New | = $ | 142,120 |
| | | | Less    Physical    Functional    External | | |
| DEPRECIATION IS BY AGE/LIFE METHOD. | | | Depreciation    47,373.29 | = $ ( | 47,373.29 ) |
| | | | Depreciated Cost of Improvements | = $ | 94,746.71 |
| | | | "As Is" Value of Site Improvements | = $ | 8,000 |
| Estimated Remaining Economic Life (HUD and VA only)    50    Years | | | INDICATED VALUE BY COST APPROACH | = $ | 122,700 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

## PROJECT INFORMATION FOR PUDs (if applicable)

| Is the developer/builder in control of the Homeowners' Association (HOA)? | Yes | No | Unit type(s) | Detached | Attached |
|---|---|---|---|---|---|

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal Name of project

| Total number of phases | | Total number of units | | Total number of units sold | |
|---|---|---|---|---|---|
| Total number of units rented | | Total number of units for sale | | Data Source(s) | |

Was the project created by the conversion of existing buildings into a PUD?    Yes    No    If Yes, date of conversion

Does the project contain any multi-dwelling units?    Yes    No    Data Source(s)

Are the units, common elements, and recreation facilities complete?    Yes    No    If No, describe status of completion

Are the common elements leased to or by the Homeowners' Association?    Yes    No    If Yes, describe the rental terms and options.

Describe common elements and recreational facilities    "HOA"  OWNERS DO NOT PAY A MANTENANCE FEE AND SUBDIVISION DOES NOT OWN COMMON ELEMENTS
, THIS IS COMMON OCCURRENCE FOR VILLAS AND TOWNHOUSES IN THE CITY OF HIALEAH

Uniform Residential Appraisal Report     File #     RM082911

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:**    The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:**     The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.
**INTENDED USER:**    The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:**    The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.
*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:**    The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

Uniform Residential Appraisal Report                    File #    RM082911

**APPRAISER'S CERTIFICATION:** The Appraiser cetifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject. property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Uniform Residential Appraisal Report          File #    RM082911

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.
3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.
4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.
5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Ruben Martinez St Cert Res REA | Name |
| Company Name  PMR APPRAISALS, INC | Company Name |
| Company Address  2901 SW 187TH TER | Company Address |
| MIRAMAR                FL        33029 | |
| Telephone Number  305-244-1160 | Telephone Number |
| Email Address  RUBENAPPRAISER@AOL.COM | Email Address |
| Date of Signature and Report    08/15/11 | Date of Signature |
| Effective Date of Appraisal    08/14/11 | State Certification # |
| State Certification #    RD 7194 | or State License # |
| or State License #    RD7194 St. Cert. Res. REA | State |
| or Other (describe)                  State # | Expiration Date of Certification or License |
| State  FL | |
| Expiration Date of Certification or License   11/30/2012 | SUBJECT PROPERTY |
| ADDRESS OF PROPERTY APPRAISED | ☐ Did not inspect subject property |
| 1881 W 72ND PL | ☐ Did inspect exterior of subject property from street |
| HIALEAH                FL        33014 | Date of Inspection |
| APPRAISED VALUE OF SUBJECT PROPERTY $              95,000 | ☐ Did inspect interior and exterior of subject property |
| LENDER/CLIENT | Date of Inspection |
| Name | COMPARABLE SALES |
| Company Name  PRIVATE | ☐ Did not inspect exterior of comparable sales from street |
| Company Address  1881 W 72ND PL | ☐ Did inspect exterior of comparable sales from street |
| HIALEAH                FL        33012 | Date of Inspection |
| Email Address | |

**TEXT ADDENDUM**                              File No. RM082911

Borrower: MATILLA, FREY O & IRMA
Property Address: 1881 W 72ND PL
City: HIALEAH                State: FL        County: MIAMI DADE
Lender: PRIVATE                              Zip Code: 33014

<u>Neighborhood Description</u>
SUBJECT IS LOCATED IN A SUBDIVISION CONSISTING OF ONE AND TWO STORY ATTACHED TOWNHOMES. SUBJECT IS LOCATED NEAR LARGER ROADS AND HIGHWAYS WHICH PROVIDE EASY ACCESS TO AMENITIES SUCH AS EMPLOYMENT, EDUCATION AND SHOPPING. SUBJECT PROPERTY IS LOCATED NEXT TO FACTORY STORES WHAT DOES THAT AFFECT THE MARKET VALUE..

<u>Market Conditions</u>
APPRAISER RESEARCHED BOTH COMPARABLES SALES AND HISTORICAL SALES DATA FROM THE PAST 18 MONTHS WITHIN THE SUBJECT'S IMMEDIATE AREA. RESEARCH SUGGESTS THAT THE SALES PRICES OF HOMES IN THE AREA ARE SLIGHTLY DECLINING. RATE OF DECLINE IS APPROXIMATELY 25 TO 30 PERCENT IN THE PAST YEAR. THERE IS AN OVERSUPPLY OF AVAILABLE HOMES NOTED VERSUS ACTUAL SALES. MARKETING TIME IS UNDER THREE MONTHS. THE COST OF FINANCING IS STABLE AS THERE HAVE BEEN NO MAJOR INCREASES IN THE INTEREST RATES. APPRAISER NOTES A SLIGHT INCREASE IN THE AMOUNT OF GOVERNMENT FUNDED LOANS.

*** APPRAISER HAS YIELDED A MORE CONSERVATIVE MARKET VALUE. SUBJECT PROPERTY IS LOCATED IN A DECLINING MARKET AND THE PROPERTY IS IN DIRECT COMPETITION WITH FORECLOSURES AND REAL ESTATE OWNED PROPERTIES. A CONSERVATIVE VALUE IS DEEMED MOST APPROPRIATE TO REFLECT THE POINT AT WHICH THE PROPERTY WOULD YIELD A FASTER SALE.

INTENDED USE: THE INTENDED USE FOR THIS APPRAISAL IS STRICTLY FOR YIELDING A MARKET VALUE. IT MAY NOT BE USED FOR ANY PURPOSES OTHER THAN THOSE EXPRESSLY WRITTEN ABOVE.

## SKETCH ADDENDUM

File No:   RM082911

Borrower      MATILLA, FREY O & IRMA
Property Address    1881 W 72ND PL
City      HIALEAH                    County    MIAMI DADE        State    FL      Zip Code    33014
Lender/Client      PRIVATE



2ND FLOOR                          1ST FLOOR

Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 704.00 | 704.00 |
| GLA2 | Second Floor | 792.00 | 792.00 |
| P/P | Porch | 220.00 | 220.00 |
| | TOTAL LIVABLE      (rounded) | | 1496 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| | 22.0  x   32.0 | 704.00 |
| Second Floor | | |
| | 22.0  x   36.0 | 792.00 |
| 2 Calculations Total (rounded) | | 1496 |

PMR APPRAISALS, INC

## SUBJECT PHOTOGRAPH ADDENDUM

RM082911

| | |
|---|---|
| Borrower | MATILLA, FREY O & IRMA |
| Property Address | 1881 W 72ND PL |
| City | HIALEAH    County    MIAMI DADE    State  FL    Zip Code    33014 |
| Lender/Client | PRIVATE |



FRONT OF
SUBJECT PROPERTY



REAR OF
SUBJECT PROPERTY



STREET SCENE

PMR APPRAISALS, INC

## INTERIOR PHOTOGRAPH ADDENDUM

RM082911

| | |
|---|---|
| Borrower / Client | MATILLA, FREY O & IRMA |
| Property Address | 1881 W 72ND PL |
| City HIALEAH | County MIAMI DADE    State FL    Zip Code 33014 |
| Lender/Client | PRIVATE |



LIVING ROOM



1/2 BATHROOM



BATHROOM

PMR APPRAISALS, INC

## COMPARABLES PHOTOGRAPH ADDENDUM

RM082911

| | |
|---|---|
| Borrower | MATILLA, FREY O & IRMA |
| Property Address | 1881 W 72ND PL |
| City HIALEAH | County MIAMI DADE    State FL    Zip Code 33014 |
| Lender/Client | PRIVATE |



**COMPARABLE SALE # 1**
1598 W 73RD ST

HIALEAH, FL

Date of Sale : 04/15/11
Sale Price : 92,500
Sq. Ft. : 1,282
$ / Sq. Ft. : 72.15



**COMPARABLE SALE # 2**
1686 W 72ND ST

HIALEAH, FL

Date of Sale : 04/01/11
Sale Price : 135,000
Sq. Ft. : 1,430
$ / Sq. Ft. : 94.41



**COMPARABLE SALE # 3**
7306 W 18TH AVE

HIALEAH, FL

Date of Sale : 07/29/11
Sale Price : 95,000
Sq. Ft. : 1,400
$ / Sq. Ft. : 67.86

PMR APPRAISALS, INC

## LOCATION MAP ADDENDUM

RM082911

| | |
|---|---|
| Borrower | MATILLA, FREY O & IRMA |
| Property Address | 1881 W 72ND PL |
| City | HIALEAH | County | MIAMI DADE | State | FL | Zip Code | 33014 |
| Lender/Client | PRIVATE |



© 2004 ESRI, GDT

### COMPARABLE SALES INFORMATION

| COMPARABLE SALE #1 | | | | COMPARABLE SALE #6 | | | |
|---|---|---|---|---|---|---|---|
| Address: | 1598 W 73RD ST | | | Address: | | | |
| Date of Sale: | 04/15/11 | Sale Price: | 92,500 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 5 | Bedrooms: | 2 | Baths: | 1.5 | Room Count - Total: | | Bedrooms: | | Baths: |
| Gross Living Area: | 1,282 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.45 MILES | | | Proximity to Subject: | | | |

| COMPARABLE SALE #2 | | | | COMPARABLE SALE #7 | | | |
|---|---|---|---|---|---|---|---|
| Address: | 1686 W 72ND ST | | | Address: | | | |
| Date of Sale: | 04/01/11 | Sale Price: | 135,000 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 5 | Bedrooms: | 2 | Baths: | 1.5 | Room Count - Total: | | Bedrooms: | | Baths: |
| Gross Living Area: | 1,430 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.35 MILES | | | Proximity to Subject: | | | |

| COMPARABLE SALE #3 | | | | COMPARABLE SALE #8 | | | |
|---|---|---|---|---|---|---|---|
| Address: | 7306 W 18TH AVE | | | Address: | | | |
| Date of Sale: | 07/29/11 | Sale Price: | 95,000 | Date of Sale: | | Sale Price: | |
| Room Count - Total: | 5 | Bedrooms: | 2 | Baths: | 2.5 | Room Count - Total: | | Bedrooms: | | Baths: |
| Gross Living Area: | 1,400 | | | Gross Living Area: | | | |
| Proximity to Subject: | 0.10 MILES | | | Proximity to Subject: | | | |

| COMPARABLE SALE #4 | | | | COMPARABLE SALE #9 | | | |
|---|---|---|---|---|---|---|---|
| Address: | | | | Address: | | | |
| Date of Sale: | | Sale Price: | | Date of Sale: | | Sale Price: | |
| Room Count - Total: | | Bedrooms: | | Baths: | | Room Count - Total: | | Bedrooms: | | Baths: |
| Gross Living Area: | | | | Gross Living Area: | | | |
| Proximity to Subject: | | | | Proximity to Subject: | | | |

| COMPARABLE SALE #5 | | | |
|---|---|---|---|
| Address: | | | |
| Date of Sale: | | Sales Price: | |
| Room Count - Total: | | Bedrooms: | | Baths: |
| Gross Living Area: | | | |
| Proximity to Subject: | | | |

PMR APPRAISALS, INC

# FLOOD MAP

RM082911

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | MATILLA, FREY O & IRMA | | | | | |
| Property Address | 1881 W 72ND PL | | | | | |
| City | HIALEAH | County | MIAMI DADE | State | FL | Zip Code | 33014 |
| Lender/Client | PRIVATE | | | | | |

**SFHA (Flood Zone)**
In

**Is the property within 250 feet of multiple Flood Zones?** **
Yes

| Community | Community Name | Zone | Panel | Panel Date |
|---|---|---|---|---|
| 120643 | HIALEAH, CITY OF | X | 0114L | 09/11/2009 |

| FIPS Code | Census Tract |
|---|---|
| 12086 | 9306 |



**FloodMap Legend**

Flood Zones

- Areas inundated by 500-year flooding
- Areas outside of the 100- and 500-year floodplains
- Areas inundated by 100-year flooding
- Areas inundated by 100-year flooding with velocity hazard
- Floodway areas
- Floodway areas with velocity hazard
- Areas of undetermined but possible flood hazards
- Areas not mapped on any published FIRM

** Determinations for properties within 250 feet of a flood zone may require additional research.

PMR APPRAISALS, INC

### AERIAL MAP ADDENDUM

RM082911

| | | | | | |
|---|---|---|---|---|---|
| Borrower | MATILLA, FREY O & IRMA | | | | |
| Property Address | 1881 W 72ND PL | | | | |
| City | HIALEAH | County | MIAMI DADE | State | FL |
| Lender/Client | PRIVATE | | | Zip Code | 33014 |



## ADDITIONAL ATTACHMENT

RM082911

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower | MATILLA, FREY O & IRMA | | | | | | |
| Property Address | 1881 W 72ND PL | | | | | | |
| City | HIALEAH | County | MIAMI DADE | State | FL | Zip Code | 33014 |
| Lender/Client | PRIVATE | | | | | | |

### NAVIGATORS INSURANCE COMPANY

THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY.

THIS POLICY APPLIES TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD.

PLEASE READ THIS POLICY CAREFULLY.

REAL ESTATE APPRAISERS ERRORS AND OMISSIONS INSURANCE POLICY

DECLARATIONS

POLICY NUMBER: PH11RAL103068IV    RENEWAL OF: _____

1. NAMED INSURED:    Ruben Martinez

2. ADDRESS:    2901 SW 187TH TER
   MIRAMAR, FL 33029

3. POLICY PERIOD:   FROM:   07/15/2011    TO:   07/15/2012
   12:01 A.M. Standard Time at the address of the Named Insured as stated in Number 2 above.

4. LIMITS OF LIABILITY:
   A. $   500,000   Damages Limit of Liability – Each Claim
   B. $   500,000   Claim Expenses Limit of Liability – Each Claim
   C. $   1,000,000   Damages Limit of Liability – Policy Aggregate
   D. $   1,000,000   Claim Expenses Limit of Liability – Policy Aggregate

5. DEDUCTIBLE (inclusive of claim expenses):    A. $ 500 -    Each Claim
   B. $ 1,000 -    Aggregate

6. PREMIUM: $   807.00    Additional 1.3% FL Hurricane Fund Surcharge $10.00

7. RETROACTIVE DATE:    07/15/2010

8. FORMS ATTACHED:    NAV RAL NIC PF (02 11)  NAV RAL 300 FL (02 11)
   NAV RAL 002 (02 11)    NAV RAL 003 (02 11)

PROGRAM ADMINISTRATOR:    Herbert H. Landy Insurance Agency Inc.
75 Second Ave Suite 410  Needham  MA 02494-2876

By Acceptance of this policy the Insured agrees that the statements in the Declarations and the Application and any attachments hereto are the Insured's agreements and representations and that this policy embodies all agreements existing between the Insured and the Company or any of its representatives relating to this insurance.

IN WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary.

AC# 5343610

### STATE OF FLORIDA

DEPARTMENT OF BUSINESS AND PROFESSIONAL REGULATION
FLORIDA REAL ESTATE APPRAISAL BD

SEQ# L10111601310

| DATE | BATCH NUMBER | LICENSE NBR |
|---|---|---|
| 11/16/2010 | 100199219 | RD7194 |

The CERTIFIED RESIDENTIAL APPRAISER
Named below IS CERTIFIED
Under the provisions of Chapter 475 FS.
Expiration date: NOV 30, 2012

MARTINEZ, RUBEN DAVID
2901 SW 187TH TERACE
MIRAMAR        FL 33029

CHARLIE LIEM